COURT OF APPEALS
DECISION
DATED AND FILED

April 4, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2057-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF352

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RAMON ALVARADO, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DENNIS P. MORONEY and DAVID A. FEISS, Judges. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Ramon Alvarado, Jr., *pro se*, appeals from a judgment of conviction, following a jury trial, of one count of first-degree recklessly endangering safety with the use of a dangerous weapon and one count of being a felon in possession of a firearm. Alvarado also appeals from the order denying his postconviction motion for relief. Upon review, we affirm.

## BACKGROUND

¶2     On March 7, 2014, the State filed an Information charging Alvarado with one count of first-degree recklessly endangering safety with the use of a dangerous weapon and one count of being a felon in possession of a firearm. The charging documents alleged that on January 27, 2014, Alvarado was driving a beige vehicle when he pulled up to P.S., shot her in the knee, and then drove away. Milwaukee Police were dispatched to the scene. P.S. initially told police that "Sanford" shot her. Later, at the hospital, she told police that "Wolfie" shot her. P.S. positively identified Alvarado from a photo array as the shooter and told police that Alvarado was known as "Wolfie." Police arrested Alvarado at his home where they located nine-millimeter ammunition that matched the shell casings found at the scene of P.S.'s shooting.

### Pretrial Proceedings

¶3     As relevant to this appeal, prior to trial, Alvarado, by counsel, filed a motion to suppress a statement he made to police at his residence. The motion alleged that when police took Alvarado into custody at his home, Officer Patrick Elm asked Alvarado whether he had a car and to describe the vehicle. Alvarado

requested a hearing to determine if Alvarado was informed of his *Miranda*[1] rights and whether his statement was voluntary. A few months later Alvarado separately filed a *pro se* motion for a speedy trial.

¶4 At a hearing on the suppression motion, the State indicated that it did not oppose Alvarado's motion and the trial court granted the motion. At the same hearing, defense counsel informed the trial court that Alvarado wanted his cell phone returned from the State so that he could contact potential alibi witnesses. Noting that the trial was approximately three weeks away, the trial court stated, "It's too late for alibi witnesses." The trial court informed counsel that if Alvarado "wants to give up his right to a speedy trial we'll talk about it," but the trial court informed trial counsel that doing so would change the timeline of the trial. Defense counsel spoke with Alvarado and then informed the trial court that Alvarado wished to keep the trial date. Defense counsel then asked the trial court to order the release of the phone's contents, as opposed to the physical phone. The State expressed concern over counsel's request, explaining that "there might be information regarding witnesses or victims." The State feared that "there's information on there that he will utilize." The trial court agreed with the State and denied Alvarado's request.

**The Trial**

¶5 The matter then proceeded to trial where multiple witnesses testified. P.S. told the jury that she had purchased drugs from Alvarado and gave him a watch as collateral until she could complete her payment. P.S. stated that a few

---

[1] *See **Miranda v. Arizona***, 384 U.S. 436 (1966).

weeks later she was walking to a bus stop when Alvarado drove up to her in a beige car and demanded his money. P.S. asked for the watch, at which point Alvarado shot her in the knee and drove away. P.S. identified Alvarado as the shooter in court.

¶6    J.L. testified that on January 27, 2014, he was in a parking lot warming up his car when he heard a "loud bang." He then saw "a lady bleeding from her leg" and "a car leaving the scene." J.L. described the car as "a tan-ish Ford Taurus four door." He called 911.

¶7    Officer Laura Captain testified that when she arrived at the scene she asked P.S. who shot her. Initially, P.S. refused to answer, but then told Captain that "Sanford" shot her. Captain accompanied P.S. in the ambulance, where P.S. then told Captain that "Wolfie" shot her. P.S. stated that "Wolfie" was driving a "beige older model four-door car."

¶8    Detective Terrence Wright testified that when he interviewed P.S. at the hospital, she told him that "Wolfie" shot her. She also described Wolfie's car as "a tan- or beige-colored vehicle." Wright showed P.S. photo arrays, from which P.S. identified Alvarado as the shooter.

¶9    Officer Patrick Elm testified that he and another officer went to the home of Alvarado's brother, Roberto, the day after the shooting to look for Alvarado. Alvarado's mother and Roberto consented to the officers' search of the home. Elm testified that they located Alvarado in the basement, took him into custody, and arrested him.

¶10    Elm also testified that he asked Roberto whether there was a beige car on his property. Over defense counsel's objection, the trial court allowed Elm

to answer that Roberto told him he was not sure if the car was on the property. Defense counsel again objected, and the court overruled the objection, determining that Elm "may testify to what his brother knows." Elm then testified that Roberto said that he had seen Alvarado drive "a brown or beige type vehicle" as recently as January 28, 2014. Defense counsel again objected on hearsay grounds. The trial court overruled the objection. Elm also testified that when police searched the basement, they found an empty gun case and some nine-millimeter bullets.

¶11 Detective Timothy Koceja testified that during the investigation, police found a nine-millimeter cartridge casing at the crime scene.

¶12 Alvarado testified in his defense, denying ever shooting P.S. and denying that that he drove a beige or brown sedan. When questioned on redirect, Alvarado denied that he ever owned or drove a brown or beige Ford Taurus. He also denied telling Elm when he was arrested at Roberto's house that he *did* drive a brown or beige Taurus, but that it was not registered in his name.

¶13 After Alvarado testified, the State informed the trial court that it would recall Elm to impeach Alvarado's testimony about the beige car. The State acknowledged that it stipulated to a *Miranda* violation at the suppression hearing, but told the trial court the *Miranda* violation was irrelevant in light of Alvarado's own testimony that he never drove a beige car. Defense counsel objected, but the trial court allowed the State to recall Elm on the grounds that Alvarado's statement to Elm was a prior inconsistent statement. The State recalled Elm, who told the jury that after arresting Alvarado and placing him in the squad car, Elm asked Alvarado whether he had a beige car. Elm said that Alvarado answered in the affirmative, but stated that the car was not registered to him. Elm included Alvarado's statements in his police report, which was admitted into evidence.

5

¶14    The jury found Alvarado guilty of both counts.  The trial court sentenced Alvarado to a total of thirteen years of initial confinement and eight years of extended supervision.

**Postconviction Proceedings**

¶15    Following sentencing Alvarado, *pro se*, moved for postconviction relief, raising a multitude of claims.  The postconviction court denied the motion without a hearing on all of Alvarado's claims except one, which is not relevant to this appeal.[2]  This appeal follows.

## DISCUSSION

¶16    Alvarado raises eight issues on appeal, however, only a handful are actually briefed.  Accordingly, we only address the issues that we can extrapolate from Alvarado's brief.  *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992) (stating that we will not address issues that are inadequately briefed).  Alvarado contends that:  (1) the State committed prosecutorial misconduct when it withheld his contacts from his cell phone because he needed them to establish his alibi and alibi witnesses; (2) the State waived any argument during the suppression hearing that Alvarado's statement to police that he drove a beige car should be suppressed; (3) the trial court committed plain error when it admitted Alvarado's statement to police that he drove a beige car as a prior inconsistent statement; and (4) the trial court committed plain error when it

---

[2] Following a hearing pursuant to **State v. Lomax**, 146 Wis. 2d 356, 432 N.W.2d 89 (1988), the postconviction court denied Alvarado's remaining claim.

admitted Roberto's statement to police that he knew Alvarado drove a beige car. We address each issue.

### Prosecutorial Misconduct

¶17    Alvarado contends that the State committed prosecutorial misconduct when it withheld Alvarado's contacts from his cell phone, because he needed them to "establish his alibi and alibi witnesses." The postconviction court rejected this claim. We agree that the postconviction court correctly rejected this claim.

¶18    A conviction is not to be reversed unless the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Alvarado must prove that the prosecutor's conduct undermined the fairness of his trial and contributed to a miscarriage of justice. *See United States v. Young*, 470 U.S. 1, 16 n.14 (1985). The reviewing court must determine whether, in light of the entire record, the misconduct denied Alvarado a fair trial. *See id.* at 11-12.

¶19    Here, the State objected to the release of Alvarado's phone and/or its contents based on concerns that Alvarado would inappropriately contact potential witnesses. The trial court agreed. As the State points out, "[t]his is not a situation where the court ordered the State to hand over the contacts to Alvarado, but the State then refused, or where the State concealed the fact that it had the information." Alvarado's issue therefore rests with the trial court's decision, not with any alleged misconduct committed by the State. Moreover, the trial court gave Alvarado a chance to obtain the contact information for the purpose of exploring an alibi defense, noting that he would have to choose between that and

his speedy trial demand because the trial was fast approaching. Alvarado chose the speedy trial after consulting with defense counsel. In short, there was no misconduct.[3]

### Alvarado's Statement to Police

¶20 As stated, at the time of Alvarado's arrest, Alvarado told Elm that he had a beige car. Alvarado moved to suppress that statement on the grounds that he was not Mirandized. At the suppression hearing the State stipulated to a *Miranda* violation and stated that it was "not opposing that at the present time." However, during the trial Alvarado testified in response to defense counsel's own question that he never told police that he drove a beige car. The State requested that Alvarado's statement be admitted for the purpose of impeachment. The trial court agreed that the statement qualified as a prior inconsistent statement. Alvarado now contends that the State waived any argument about the admissibility of his statement. Alvarado is mistaken.

¶21 "A statement of the defendant made without the appropriate *Miranda* warnings, although inadmissible in the prosecution's case-in-chief, may be used to impeach the defendant's credibility if the defendant testifies to matters contrary to what is in the excluded statement." *See State v. Rejholec*, 2021 WI App 45, ¶27 n.10, 398 Wis. 2d 729, 963 N.W.2d 121 (quoting *State v. Mendoza*, 96 Wis. 2d 106, 118, 291 N.W.2d 478 (1980)). That is precisely what happened

---

[3] To the extent Alvarado argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), we note that Alvarado did not raise a *Brady* claim in his postconviction motion and, therefore, it is not properly before this court. *See State v. Rogers*, 196 Wis. 2d 817, 826-29, 539 N.W.2d 897 (Ct. App. 1995) (providing that a failure to make a specific argument in the trial court forfeits the right to make that challenge on appeal).

here. The State acknowledged that it had stipulated that there was a ***Miranda*** violation, but argued, "[Alvarado] testified now. I have a right to ask him about it, and now in rebuttal I have a right to impeach him regarding what he told the police." Thus, the State did not waive its argument or right to introduce the statement.

¶22 Along those same lines, Alvarado also contends that the trial court committed plain error when it admitted Alvarado's statement to Elm as a prior inconsistent statement. As stated, Alvarado himself opened the door to the admission of that statement via his own testimony; however, even if the trial court did commit an error, the error was harmless based on the evidence in the record.

¶23 "Harmless error analysis requires us to look to the effect of the error on the jury's verdict." ***State v. Hunt***, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434. "For the error to be deemed harmless, the party that benefited from the error—here, the State—must prove 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" ***Id.*** (citation omitted). Our supreme court

> has previously articulated several [non-exhaustive] factors to assist in a harmless error analysis, including but not limited to: the importance of the erroneously admitted or excluded evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case.

*Id.*, ¶27.

¶24 Based on our review of these factors, we conclude that if there was an error in the admission of Alvarado's statement, the error was harmless. The evidence against Alvarado was overwhelming. P.S. identified Alvarado as her

9

shooter multiple times, bullets matching those found at the scene were located at Alvarado's home, and multiple witnesses testified that Alvarado drove a beige vehicle like the one seen leaving the scene of the shooting. If the trial court committed an error, it did not contribute to the verdict.

### Roberto's Statement

¶25 Alvarado contends that the trial court committed plain error when it admitted Roberto's statement to police that he knew Alvarado drove a beige car. Alvarado contends that the testimony violated the Confrontation Clause because Roberto's statement was testimonial.

¶26 We note first that Alvarado does not actually discuss the factors this court must consider to determine whether a statement is testimonial in accordance with *State v. Mattox*, 2017 WI 9, ¶32, 373 Wis. 2d 122, 890 N.W.2d 256. Nonetheless, we again note that if the trial court committed an error, the error is harmless in light of the record. As stated, the evidence against Alvarado was overwhelming and Roberto's statements regarding a beige car were simply cumulative. P.S. told police that Alvarado was driving a beige car at the time of the shooting and testified as to the same. T.L. testified that he saw a beige car drive away from the scene of the shooting. Alvarado cannot now contend that the admission of Roberto's statements affected the outcome of his trial.

¶27 To the extent Alvarado raised issues not addressed in this decision, we conclude that the arguments are not developed and we do not address them further. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).

¶28 For the foregoing reasons, we affirm the judgment of conviction and the order denying Alvarado's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).